IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v | ) | CR. NO. 3:09cr96-WKW |
| | ) | (WO) |
| JAMES HAROLD GRIFFITH | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.  Introduction**

On September 3, 2009, the defendant, James Harold Griffith ("Griffith"), was charged in a superseding indictment with knowingly and intentionally manufacturing 50 grams or more of methamphetamine in violation of 21 U.S.C. § 841(a)(1), knowingly using and carrying firearms during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i), knowingly opening, leasing, renting, using and maintaining a place for the purpose of manufacturing, distributing and using methamphetamine in violation of 21 U.S.C. § 856(a)(1), and knowingly and intentionally possessing a mixture or substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. § 844(a).  (Doc. # 58). In addition, Griffith was charged in two counts with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).  (*Id*.).

Now pending before the court is Griffith's motion to suppress all evidence seized without a warrant and all statements made during the search of his house at 154 West Ridge Road, Dadeville, Alabama.  (Doc. # 55).  The court held an evidentiary hearing on the motion on September 29, 2009.  Based on the evidence presented to the court and argument of the parties, the court concludes that the motion to suppress is due to be denied.

## II.  Facts

Prior to February 25, 2008, Tallapoosa County Narcotics Investigator Josh McAllister ("McAllister") received information that Griffith was cooking methamphetamine at the West Ridge Road residence.  On February 25, 2008, McAllister and Tallapoosa County Narcotics Investigators Fred White ("White") and Cliff Scott ("Scott") drove by the residence to try to confirm the information.  When they drove by the West Ridge Road residence, the officers observed a man working on a motorcycle in the front yard.

Armed with an arrest warrant for Griffith for failing to appear in a child support case, McAllister, White and Scott approached the residence to execute the arrest warrant.  When they pulled into the yard, nobody was outside.  McAllister knocked on the front door but got no response.  Griffith then came out of another door on the house's front which Griffith identified as leading to his bedroom.  McAllister informed Griffith that he was under arrest for the failure to appear warrant.  McAllister handcuffed Griffith and searched him incident to his arrest.  During the search, McAllister discovered a vial in Griffith's pocket that contained methamphetamine.

McAllister then told Griffith that they were at his house because they had received complaints that Griffith was cooking methamphetamine.  McAllister asked Griffith if they could go inside the house and talk.  McAllister also told Griffith that he would like consent to search the residence, and Griffith gave him consent.  According to McAllister, Griffith also said he "had items that he had cooked with;" he would show the officers those things

and that he "knew this was coming - I am glad this is over with."[1]  Griffith, McAllister and White then went into the house.

When they entered the house, White asked Griffith about the man they had seen in the yard.  Griffith indicated that the man, Lewis Flowers[2] ("Flowers"), was down the hallway in one of the bedrooms.  Griffith and White called Flowers to come out.  Because White had information that Flowers carried a firearm at all times and White saw a rifle propped against the wall in the hallway, White pulled out his service weapon.  When Flowers came out of the bedroom with his hands in the air, White holstered his weapon.

Flowers and Griffith were taken out of the residence.  While outside, White read *Miranda* warnings to Griffith and Flowers.  McAllister then took Griffith back into the residence.  Griffith was very cooperative, walking McAllister around the property, pointing out various items used in the manufacturing of methamphetamine.[3]

Griffith was later transported to the Tallapoosa County Jail.  The next day, McAllister advised Griffith of his *Miranda* rights and asked him for a written statement.  Griffith waived his right to counsel and gave McAllister a statement.  McAllister typed as Griffith spoke and

---

[1] During the evidentiary hearing, Griffith testified that he knew his ex-girlfriend had called the officers and told them where at the house the methamphetamine paraphernalia was located.  According to Griffith, McAllister told him he needed to "quit pissing these women off."

[2] Lewis Flowers is Griffith's co-defendant in this case.  Flowers has entered a guilty plea and is awaiting sentencing.

[3] The officers recovered the following items: numerous pipes and foil used to smoke methamphetamine; numerous scales, hemostats, beakers, syringes, plates, ph paper, strike plates; iodine and phosphorous mixture, drain opener, heet, lighter fluid, hydrogen peroxide, lye, acetone, denatured alcohol, muriatic acid, and a jar containing pseudo.  The officers also recovered 5 firearms and ammunition.

then Griffith signed the statement. Griffith concedes that the written statement was an accurate transcription of his oral statement. In the statement, Griffith admits to using and making methamphetamine.[4]

### III.  Discussion

#### A.  The West Ridge Road House Search

Griffith asserts that the evidence seized and statements made during and after the warrantless search of his residence should be suppressed because his consent to search the house was not voluntarily given. The sole issue raised by the motion to suppress is whether Griffith's consent was obtained by coercion.

It is a fundamentally basis tenet of criminal law that the Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. AMEND. IV.[5] *See also Minnesota v. Carter*, 525 U.S. 83, 88 (1998). The Amendment's primary purpose is to protect citizens from unwarranted governmental intrusion and to prevent abusive police power. *See Johnson v. United States*, 333 U.S. 10, 13 (1948); *United States v. Mendenhall*, 446 U.S. 544, 553-54 (1980) (plurality opinion). The Fourth Amendment draws a firm line at the threshold of a residence because "'[a]t the very core of the Fourth Amendment stands the right of a man to

---

[4] Based on the development of the facts at the hearing and the argument of counsel which was limited to the voluntariness issue, the court concludes that Griffith has waived any independent challenge to this statement.

[5] Specifically, the Fourth Amendment provides that "[]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

retreat into his own home and there be free from unreasonable governmental intrusion.'" *Payton v. New York*, 445 U.S. 573, 589-90 (1980) (quoting *Silverman v. United States*, 365 U.S. 505, 511 (1961)). Unless consent is given or exigent circumstances exist, police officers must obtain a warrant supported by probable cause to justify a search under the Fourth Amendment. *United States v. Magluta*, 418 F.3d 1166, 1182 (11th Cir.2005); *Payton*, *supra*. A search of property without a warrant and probable cause is constitutionally permissible if preceded by valid consent. *United States v. Dunkley*, 911 F.2d 522, 525 (11th Cir. 1990).

During the hearing, Griffith testified that he did not give McAllister consent to search the house on West Ridge Road. McAllister, on the other hand, testified that Griffith gave consent and then offered to show him where the incriminating evidence was located. Given that the testimony of Griffith and McAllister are conflicting, the court must determine the credibility of the testimony. The court recognizes that it is improper to determine credibility based on the "status" of a witness. *United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002). Thus, McAllister's status as a police officer is not determinative. Rather, the court must weigh the testimony of these two witnesses in light of all the facts, taking into account their interests, the consistencies or inconsistencies in their testimony, and their demeanor on the stand. *Gallego v. United States*, 174 F.3d 1196, 1198 (11th Cir. 1999). When weighing the testimony of Griffith with the testimony of other witnesses, the court finds that Griffith's testimony is not credible. As the defendant in this matter, his interest in the outcome of this case militates against his veracity in this regard. Moreover, Griffith

testified that immediately before the officers arrived at the residence, he and Flowers were smoking methamphetamine which does not give the court any confidence in his recollection of the events. The court concludes that Griffith was not credible and, therefore, McAllister asked for and received consent from Griffith to search.

The next question for the court is to determine whether Griffith's consent was voluntary.

> Whether an individual's consent to a warrantless search was given voluntarily is a question of fact that must be decided in light of the totality of the circumstances. *Schneckloth v. Bustamonte, supra*, 412 U.S. [218], 227, 93 S.Ct. [2041], 2047 [(1973)]. Further, "'[t]he government bears the burden of proving . . . that the consent was not a function of acquiescence to a claim of lawful authority but rather was given freely and voluntarily.'"

*United States v. Gonzalez*, 71 F.3d 819, 828 (11th Cir. 1996) quoting *United States v. Hidalgo*, 7 F.3d 1566, 1571 (11th Cir. 1993). *See also United States v. Villanueva-Fabela*, 202 Fed. Appx. 421, 426 (11th Cir. 2006) (No. 05-15156); *United States v. Brown*, 223 Fed. Appx. 875 (11th Cir. 2007) (No. 06-15064).

A consensual search is constitutional if it is voluntary, *i.e.* the product of an essentially free and unconstrained choice. *United States v. Purcell*, 236 F.3d 1274, 1281 (11th Cir. 2001); *United States v. Garcia,* 890 F.2d 355, 360 (11th Cir. 1989) (citing *Culombe v. Connecticut,* 367 U.S. 568, 602 (1961)). Voluntariness is a factual assessment and depends on the totality of the circumstances. *Purcell*, *supra.* In evaluating voluntariness, the court considers several factors, including the presence of coercive police procedures, the extent of the individual's cooperation with the officers, the individual's awareness of his right to refuse

consent, the individual's education and intelligence, and the individual's belief that no incriminating evidence will be found. *Id. See also United States v. Holmes*, 270 Fed. Appx. 767, 768 (11th Cir. 2008) (No. 07-12004)

In this case, the Government submitted Griffith's statement, in which he acknowledged that "the reason [he] wanted to show [the officers] all of the stuff was [he] wouldn't have a reason to fall back on it." (Gov't Ex. 3). Griffith argues that his consent was coerced because the officers took him back into his house after he was arrested and handcuffed, and then drew their weapons while in the house. The fact that Griffith was in his own living room actually militates against coercion. *See Garcia,* 890 F.2d at 361 ("We submit that one would feel more comfortable and free from pressure when he is in his own living room than when he is lying in the grass on the edge of the street.")

The fact that Griffith was under arrest and in handcuffs is but one factor for the court to consider. *See Villanueva-Fabela*, 202 Fed. Appx. at 427. There is no evidence before the court that "these officers employed any tactics that would augment the degree of coercion that is inherent in any arrest." *Garcia*, 890 F.2d at 362. There is no evidence that Griffith was harassed or intimidated by the officers, *id*., or that abusive language or physical threats were leveled against Griffith. *See United States v. Espinona-Orlando*, 704 F.2d 507, 513 (11th Cir. 1983).

During the hearing, White testified that he drew his weapon upon entering the house because Griffith told him that Flowers was in a back bedroom and White had information that Flowers always carried a firearm. Griffith does not assert, and there is no evidence to

suggest, that White pointed his gun at him. "[T]he "show of force" to which [Griffith] refers was minimal" and occurred after Griffith gave his consent.[6] *See Brown*, 223 Fed. Appx. at 880.

Courts have found consent to be voluntary in factual scenarios more coercive than that described by Griffith. For example, in *United States v. Espinosa-Orlando*, the court found consent voluntary where the consenting individual was arrested at gunpoint and consented to the search of his automobile while lying on the ground and while one officer had a weapon drawn. 704 F.2d at 513. In *United States v. Hidalgo*, consent was voluntary where the defendant was "arrested by SWAT team members who broke into his home in the early morning, woke him, and forced him to the ground at gunpoint." 7 F.3d at 1571. In *United States v. Garcia*, the consenting individual was arrested and handcuffed in the presence of fourteen law enforcement officers when consent was provided. 890 F.2d at 362 . In each of these cases, consent was found to be voluntary despite evidence of some physical coercion. The situation described by Griffith, that he was taken into his own home in handcuffs, does not rise to the level necessary to invalidate his consent to search the house. This court therefore concludes that Griffith's consent to search the house was voluntary.

## CONCLUSION

For the reasons as stated, this court concludes that the defendant's constitutional rights were not violated, and it is the RECOMMENDATION of the Magistrate Judge that the

---

[6] The fact that Griffith gave consent prior to being given *Miranda* warnings "does not invalidate the consent." *See United States v. Villanueva-Fabela*, 202 Fed. Appx. 421, 427 (11th Cir. 2006) (No. 05-15156).

defendant's motion to suppress be DENIED.  It is further

ORDERED that the parties shall file any objections to the said Recommendation on or before **October 13, 2009.**  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party objects.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a de novo determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this  1st day of October, 2009.

                                                /s/Charles S. Coody
                                              CHARLES S. COODY
                                              CHIEF UNITED STATES MAGISTRATE JUDGE